Sophia Goren Gold (Cal. Bar No. 307971)
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, CA 94710
sgold@kalielgold.com
(202) 350-4783

Jeffrey D. Kaliel (Cal. Bar No. 238293)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
jkaliel@kalielpllc.com
(202) 350-4783

Francisco Guerra IV (Tex. Bar No. 00796684 – *Pro Hac Vice*)
Jennifer A. Neal (Tex. Bar No. 24089834 – *Pro Hac Vice*)
**WATTS GUERRA LLP**
875 East Ashby Place, Suite 1200
San Antonio, TX 78212
fguerra@wattsguerra.com
jneal@wattsguerra.com
(210) 447-0500

*Attorneys for Plaintiffs Van Diest and Khalikulov and the Putative Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL VAN DIEST and SERGEY KHALIKULOV, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> TESLA, INC. dba TESLA MOTORS, <br><br> *Defendant*. | Case No.  4:23-cv-04098-YGR <br><br> **PLAINTIFFS SAMUEL VAN DIEST'S AND SERGEY KHALIKULOV'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Complaint Filed: August 2, 2023 <br><br> [Related Case: *James Porter, et al., v. Tesla, Inc., d/b/a Tesla Motors, Inc.*, No. 4:23-cv-03878-YGR] |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... i

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 2

III.   ARGUMENT .............................................................................................................. 4

      A.    Legal Standard ................................................................................................ 4

      B.    The Question of Arbitrability Is for the Court to Decide ................................ 5

      C.    Tesla's Arbitration Provision in its 2021 and 2022 Order Agreements Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief in Any Forum and are Therefore Unenforceable Under *McGill* ................................ 7

            1.    Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief in Any Forum ................................ 7

            2.    Tesla's Arbitration Provision is Unenforceable Under *McGill* ................... 9

                a.    Tesla's Arbitration Provision Improperly Waives the Right to Seek Public Injunctive Relief in Any Forum ................................ 10

                b.    Plaintiffs Seek Public Injunctive Relief on Behalf of the General Public ................................ 11

            3.    Because the Waiver Is Invalid, the Entire UCL, CLRA, and FAL Claims for Relief Must Be Severed for Judicial Determination, Not Just the Request for Public Injunctive Relief ................................ 14

IV.   CONCLUSION ......................................................................................................... 16

1

## **TABLE OF AUTHORITIES**

2
Page(s)

3
**Cases**

4
*Armstrong v. Michaels Stores, Inc.,*
   59 F.4th 1011 (9th Cir. 2023) ...................................................................................4

5

6
*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011)...........................................................................................4

7
*Blair v. Rent-A-Center, Inc.,*
   928 F.3d 819 (9th Cir. 2019) ............................................2, 4, 8, 9, 11, 13, 14, 16

8

9
*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) .................................................................................6

10
*Eiess v. USAA Fed. Sav. Bank,*
   404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...................................................................6

11

12
*Hiatt v. Tesla Inc.,*
   No. 21-00098 LEK-KJM, 2021 WL 6052266 (D. Hawaii 2021) .............................6

13
*In re StubHub Refund Litig.,*
   No. 20-md-02951-HSG, 2022 WL 1028711 (N.D. Cal. Apr. 6, 2022) ...............16

14

15
*In re Stubhub Refund Litig.,*
   No. 20-md-02951-HSG, 2021 WL 5447006 (N.D. Cal. Nov. 22, 2021) .............13

16
*In re Tesla Driver Assistance Systems Litig.,*
   No. 22-cv-05240-HSG, 2023 WL 6391477 (N.D. Cal. Sept. 30, 2023).................5

17

18
*Ingalls v. Spotify USA, Inc.,*
   No. C 16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ...................6

19
*Iskanian v. CLS Transp. L.A., LLC,*
   59 Cal. 4th 348 (2014) ............................................................................................9

20

21
*Jack v. Ring LLC,*
   91 Cal. App. 5th 1186 (Cal. Ct. App. 2023) .......................................................5, 16

22
*Lee v. Tesla, Inc.,*
   No. SACV2000570JVSKESX, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) .................2, 11, 12, 14

23

24
*MacClelland v. Cellco Partnership,*
   609 F. Supp. 3d 1024 (N.D. Cal. 2022) ...........................................................9 ,11, 12

25
*Magill v. Wells Fargo Bank, N.A.,*
   No. 4:21-cv-01877 YGR, 2021 WL 6199649 (N.D. Cal. June 25, 2021) ...........6

26

27
*Maldonado v. Fast Auto Loans, Inc.,*
   60 Cal. App. 5th 710, 722 (2010), *cert. denied,* No. 21-31, 142 S. Ct. 708
   (U.S. Dec. 13, 2021) ..............................................................................................13

28

PLAINTIFFS' MEMORANDUM ISO OPPOSITION TO MOTION TO COMPEL ARBITRATION

*McArdle v. AT&T Mobility LLC,*
    No. 090-cv-01117-CW, 2017 WL 4354998 (N.D. Cal. Oc. 2, 2017)..................................11

*McArdle v. AT&T Mobility, LLC,*
    772 Fed. Appx. 575 (9th Cir. 2019), *cert denied.,* No. 19-1078, 140 S. Ct. 2827
    (U.S. June 1, 2020) ...........................................................................................2, 8, 9, 13

*McBurnie v. Acceptance Now, LLC,*
    No. 3:21-cv-01429-JD, 2022 WL 17342195 (N.D. Cal. Nov. 30, 2022) ......................9, 16

*McGill v. Citibank, N.A.,*
    2 Cal. 5th 945 (2017) ................................................................................................ passim

*Mejia v. Dacm, Inc.,*
    54 Cal. App. 5th 691, 268 Cal. Rptr. 3d 642 (Aug. 24, 2020).....................................12, 13

*Morgan v. Sundance, Inc.,*
    142 S. Ct. 1708 (2022)..................................................................................................4, 5

*Nguyen v. Tesla, Inc.,*
    No. 8:19-cv-01422-JLS-JDE, 2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) ......................2, 10, 12, 14

*Olosoni v. HRB Tax Group, Inc.,*
    No. 19-cv-03610-SK, 2019 WL 7576680 (N.D. Cal. Nov. 5, 2019)...................................13

*Sakkab v. Luxottica Retail North America, Inc.,*
    803 F.3d 425 (9th Cir. 2015) ...........................................................................................4

*Tillage v. Comcast Corp. et al.,*
    772 Fed. Appx. 569 (9th Cir. 2019), *cert. denied,* No. 19-1066, 140 S. Ct. 2827
    (U.S. June 1, 2020) .........................................................................................................2, 9

*Tompkins v. 23andMe, Inc.,*
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) .........................6

*Vasquez v. Cebridge Telecom CA,*
    No. 21-cv-06400-EMC, 2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) ............................13

*Viking River Cruises, Inc. v. Moriana,*
    142 S. Ct. 1906 (2022)....................................................................................................9

**Statutes**

Bus. & Prof. Code § 17200 ....................................................................................................1

Bus. & Prof. Code § 17500 ....................................................................................................1

Civ. Code § 1770 ...................................................................................................................1

Civil Code § 3513 ..................................................................................................................8

Lab. Code § 2698 ..................................................................................................................9

9 U.S.C. § 2...........................................................................................................................4, 8

PLAINTIFFS' MEMORANDUM ISO OPPOSITION TO MOTION TO COMPEL ARBITRATION

Plaintiffs Samuel Van Diest and Sergey Khalikulov ("Plaintiffs") hereby submit the following opposition to Defendant Tesla, Inc.'s ("Tesla") Motion to Compel Arbitration of Plaintiffs' Claims on an Individual Basis (the "Motion").

## I. **INTRODUCTION**

Plaintiffs allege that Tesla deceives consumers by advertising that its electric vehicles have artificially inflated driving ranges when those vehicles do not drive as far as advertised. Tesla engages in a three-fold fraud that begins before purchase and extends through ownership. First, Tesla misrepresents its estimated driving range to induce purchases on its website and across all marketing channels, misrepresents its driving range projections to evade regulatory checks, and tests its vehicles in artificial settings that are designed to optimize range estimates. Second, Tesla uses its control of its vehicles' onboard technology after purchase to misrepresent its driving range. Third, Tesla uses its control of the Tesla service team to conceal its pre-purchase and post-purchase misrepresentations by, among other things, intentionally cancelling service appointments for drivers who complain about their vehicles for failing to drive for the advertised driving range. As a result, consumers have purchased Tesla vehicles that they would not have purchased had they known Tesla's vehicles would not meet their advertised driving range.

Plaintiffs sued Tesla on behalf of themselves and a national class and California subclass, alleging claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.* (the "CLRA"), False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), for breach of express and implied warranties, and for breach of contract. In addition to seeking damages and restitution of all amounts improperly paid to Tesla as a result of its alleged wrongs, Plaintiffs seek an injunction on behalf of the general public to prevent Tesla from continuing to mislead current and prospective Tesla owners regarding the driving ranges of its automobiles.

In the instant motion, Tesla seeks to evade class-wide liability by moving to compel Plaintiffs' claims to arbitration on an individual basis. But Defendant's motion must be denied because Tesla's Arbitration Provision at issue unlawfully deprives Plaintiffs from seeking public injunctive relief in any forum and therefore, runs afoul of the California Supreme Court's decision in *McGill v. Citibank, N.A.,* 2

Cal. 5th 945 (2017) ("*McGill*"). The Ninth Circuit has affirmed *McGill*'s ruling in multiple instances,[1] and several district courts have routinely invalidated arbitration provisions, like Tesla's here, that waive representative actions while prohibiting the arbitrator from making decisions or awarding relief that benefits anyone other than Plaintiffs. What is more, two California district courts have already determined that the same operative language in Tesla's Arbitration Provision at issue here violates *McGill*. *See Nguyen v. Tesla, Inc.,* No. 819CV01422JLSJDE, 2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) and *Lee v. Tesla, Inc.,* No. SACV2000570JVSKESX, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020). There is no reason for this Court to hold differently here.

Critically, too, the decision that Tesla's Arbitration Provision is unenforceable under *McGill* must be made by this Court—and not the arbitrator—because there is no clear and unmistakable evidence that the Parties agreed to delegate questions of arbitrability to the arbitrator.

In the face of a waiver of public injunctive relief that is invalid under California law, the question then becomes whether and how to sever Plaintiffs' claims. The answer is found in Tesla's contract, which states, "If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and *any other claims must be arbitrated*." *See* Ahluwalia Decl., Ex. 11 at p. 4 (emphasis added). Here, the "other claims [to] be arbitrated" are Plaintiffs claims for breach of express and implied warranties, and for breach of contract. Plaintiffs' "claims" under the UCL, CLRA, and FAL, however, must be fully litigated in Court.

Thus, the Court should find that Tesla's Arbitration Provision offends *McGill*, is void and unenforceable, and that Plaintiffs' UCL, CLRA, and FAL claims should be litigated in this Court in their entirety. Accordingly, Defendant's Motion must be denied.

## II.   FACTUAL BACKGROUND

In May 2021, Plaintiff Van Diest purchased a new Tesla Model 3 Long Range based in part on Tesla's driving range misrepresentations made on its website. Class Action Complaint ("Compl."), ¶¶ 45-

---

[1] *See Blair v. Rent-A-Center, Inc.,* 928 F.3d 819 (9th Cir. 2019); *McArdle v. AT&T Mobility, LLC,* 772 Fed. Appx. 575 (9th Cir. 2019), *cert. denied.,* No. 19-1078, 140 S. Ct. 2827 (U.S. June 1, 2020) (concurrently filed opinion adopting holding in *Blair*); *see also Tillage v. Comcast Corp. et. al.,* 772 Fed. Appx. 569 (9th Cir. 2019), *cert. denied,* No. 19-1066, 140 S. Ct. 2827 (U.S. June 1, 2020) (same).

46. The 2021 Order Agreement was the governing agreement in place at the time of Plaintiff Van Diest's purchase and included an arbitration provision which provided:

> **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").
> . . .
>
> [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.
> . . .
>
> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. **The arbitrator cannot hear class or representative claims *or requests for relief on behalf of others purchasing or leasing Tesla vehicles*.** In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. **If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and *any other claims must be arbitrated*.**
> . . .
>
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. ***If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract*.**

*See* Ahluwalia Decl., Ex. 11 at p. 4 (bolded and italicized emphasis added).

In December 2022, Plaintiff Khalikulov purchased a used 2020 Tesla Model 3 Long Range based in part on Tesla's driving range misrepresentations made on its website. Compl., ¶¶ 54–55. The 2022 Order Agreement was the governing agreement in place at the time of Plaintiff Khalikulov's purchase and included an arbitration provision that was materially identical to the arbitration provision in Tesla's 2021 Order Agreement, except for the explicit statement that the court is to determine issues of arbitrability: "You further agree that any disputes related to the arbitrability of your claims will be decided by the court rather than an arbitrator, notwithstanding AAA rules to the contrary." *See* Ahluwalia Decl., Ex. 12 at p.3.

Neither of the Plaintiffs opted out of the respective arbitration provisions. Thus, both the 2021 and 2022 Order Agreements' arbitration provisions control and "override" the subsequent Sales Agreements entered into with Tesla, and any arbitration agreement in the Sales Agreements is, per the

terms of the Order Agreement, irrelevant. *See* Ahluwalia Decl., Ex 11 at p. 4; Ex. 12 at p. 3 ("If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract").

### III.    ARGUMENT

Plaintiffs' claims are not subject to arbitration because both the 2021 and 2022 versions of Tesla's Order Agreements that Plaintiffs agreed to are unenforceable under *McGill* because the Arbitration Provisions therein deprive consumers of the right to seek public injunctive relief in any forum.

#### A.    Legal Standard

The Federal Arbitration Act (the "FAA") provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The final clause of § 2, its savings clause, 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail North America, Inc.,* 803 F.3d 425, 432 (9th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1746 (2011)). The Ninth Circuit has made clear that "the *McGill* rule is a generally applicable contract defense derived from long-established California public policy" and "a ground for the revocation of any contract." *Blair,* 928 F.3d at 828 (alterations omitted).

The United States Supreme Court recently held that the FAA prohibits courts from adopting any "special, arbitration-preferring procedural rules" that "tilt the playing field in favor of (or against) arbitration." *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713–14 (2022). This new precedent is significant because it supersedes prior case law suggesting that there is a liberal policy in favor of arbitration, or that the FAA requires the court to construe contracts in favor of arbitration. *Id.* at 1713 (clarifying that the pro-arbitration "federal policy is about treating arbitration contracts like all others, not about fostering arbitration"). Rather, a court must consider an arbitration clause just as it would consider any other contract term. *Id.* ("Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."); *see also Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011, 1015 (9th Cir. 2023)

(recognizing, in light of *Morgan*'s holding, "that there is no longer a thumb on the scale in favor of arbitration").

### B.     The Question of Arbitrability Is for the Court to Decide

As an initial matter, any questions about whether Tesla's Arbitration Provision is enforceable must be answered by this Court. Tesla argues to the contrary. As to Plaintiff Van Diest, Tesla contends that the 2021 Order Agreement's incorporation of the AAA's Consumer Arbitration Rules constitutes "clear and unmistakable evidence" of an intent to delegate questions of arbitrability to the arbitrator. Br. At 19-21. But any attempted delegation was thwarted by its materially conflicting clause within the Arbitration Provision itself, which contemplates preserving questions of arbitrability for the court:

> *If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced* as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

*See* Ahluwalia Decl., Ex. 11 at p. 4 (emphasis added).

Very recently, Judge Haywood S. Gilliam, Jr., of the Northern District of California reviewed the same language and rejected Tesla's argument that its incorporation of the AAA rules was sufficient to delegate arbitrability given the "inherent tension" in Tesla's arbitration provision. *See In re Tesla Driver Assistance Systems Litig.,* No. 22-cv-05240-HSG, 2023 WL 6391477 at *5-6 (N.D. Cal. Sept. 30, 2023). The court explained:

> Although incorporation of the AAA rules may on its own constitute 'clear and unmistakable evidence' of the parties' intent to delegate arbitrability issues, the arbitration agreement here leaves open the possibility that a court could decide such issues too. The Court is not persuaded by Defendant's suggestions that these provisions should be read in isolation, and they provide no rationale for how to harmonize them.

*Id.* at *6. This Court should similarly conclude that it is impossible to reconcile Tesla's express provision that permits arbitrability issues to be decided by "a court or arbitrator" and such language defeats any "clear and unmistakable evidence" of an intent to delegate arbitrability. *See also Jack v. Ring LLC,* 91 Cal. App. 5th 1186, 1199 (Cal. Ct. App. 2023) (finding arbitration provision was ambiguous where express delegation clause conflicted with severability clause and holding because "the arbitration provision points in two directions on the question whether a court or an arbitrator is to decide the enforceability of the agreement to arbitrate . . . we cannot conclude the parties clearly and unmistakably delegated to the arbitrator exclusive authority to decide whether the arbitration provision is valid under

1     *McGill*"); *id.* at 1201-02 (also finding "the reference to the JAMS Rules does not cure the ambiguity

2     created by the severability clause/poison pill"). And although Tesla asserts that courts have already found

3     that this Order Agreement delegated arbitrability through incorporation of the AAA rules, neither of

4     those decisions discussed the material conflict Plaintiffs (and Judge Gilliam) identify herein. *See e.g.,*

5     Schrader Decl., Ex. A (*Lambrix* Order); *Hiatt v. Tesla Inc.,* No. 21-00098 LEK-KJM, 2021 WL 6052266

6     at *4 (D. Hawaii 2021).

7        Further, while Tesla is correct that the Ninth Circuit has recognized that incorporation of the

8     AAA rules can be "clear and unmistakable evidence" of delegation, *see Brennan v. Opus Bank,* 796 F.3d

9     1125, 1130 (9th Cir. 2015)*,* "[w]here at least one party is unsophisticated, judges *in this district* routinely

10    find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable

11    agreement to arbitrate arbitrability." *Magill v. Wells Fargo Bank, N.A.,* No. 4:21-cv-01877 YGR, 2021

12    WL 6199649, *5 (N.D. Cal. June 25, 2021) (emphasis added) (incorporation of AAA rules did not

13    clearly and unmistakably delegate issues of arbitrability because bank customers "could not be expected

14    to understand that the incorporation of the AAA rules would mean that the overwhelming majority of

15    disputes arising out of the Account Agreement would be resolved by an arbitrator"); *Eiess v. USAA Fed.*

16    *Sav. Bank,* 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (same and noting that "[f]or an unsophisticated

17    plaintiff to discover she had agreed to delegate questions of arbitrability, she would need to locate the

18    arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the

19    importance of a specific rule granting the arbitrator jurisdiction over questions of validity—a question the

20    Supreme Court itself has deemed 'rather arcane'") (citation omitted); *Ingalls v. Spotify USA, Inc.,* No. C

21    16-03533 WHA, 2016 WL 6679561, *3-4 (N.D. Cal. Nov. 14, 2016) (noting that "every district court

22    decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules

23    was insufficient to establish delegate arbitrability in consumer contracts involving at least one

24    unsophisticated party"); *Tompkins v. 23andMe, Inc.,* No. 5:13-CV-05682-LHK, 2014 WL 2903752, at

25    *11-12 (N.D. Cal. June 25, 2014) (incorporation of AAA rules was insufficient to establish delegation in

26    contract between a DNA testing service and individual consumers).

27        As to Plaintiff Khalikulov, however, it is undisputed that the 2022 Order Agreement governing

28    his claims does *not* delegate arbitrability. *See* Ahluwalia Decl., Ex. 12 at p. 3 (providing that "any

disputes related to the arbitrability of your claims will be decided by the court rather than an arbitrator, notwithstanding AAA rules to the contrary."). Tesla does not contest this point. Br. at 7 (admitting that for Order Agreements entered into after June 2022, the arbitration provision changed to require that arbitrability disputes be resolved by the court). Rather, Tesla argues that Plaintiff Khalikulov agreed to delegate arbitrability by way of the Sales Agreement. The Court can easily dispose of this argument because the Arbitration Provision in the Order Agreement clearly and explicitly "overrides" the arbitration provision within the Sales Agreement. *See* Ahluwalia Decl., Ex. 11 at p. 4.

Thus, in the absence of a "clear and unmistakable" intent to delegate, all questions of arbitrability are for this Court alone.

### C. Tesla's Arbitration Provision in its 2021 and 2022 Order Agreements Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief in Any Forum and are Therefore Unenforceable Under *McGill*

Tesla's 2021 and 2022 Order Agreements impermissibly deprive Plaintiffs of their right to seek public injunctive relief—in both arbitration and in court—and thereby run afoul of the California Supreme Court's decision in *McGill.* As such, Tesla's Arbitration Provision must be held unenforceable, allowing the entirety of Plaintiffs' claims seeking such relief to be litigated in court.

### 1. Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief in Any Forum

In *McGill,* the Supreme Court of California unanimously held that a contract provision purporting to prevent a consumer from seeking public injunctive relief in any forum is unenforceable. "Public injunctive relief" is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill,* 2 Cal. 5th at 951. The issue before the court was whether the arbitration provision in question "is valid and enforceable insofar as it purports to waive [plaintiffs'] right to seek public injunctive relief *in any forum.*" *Id.* at 956 (emphasis in original). After finding that the complaint did, in fact, seek public injunctive relief, and that such relief was available under the CLRA, UCL, and FAL, the court concluded that the "arbitration provision here at issue is invalid and unenforceable under state law insofar as it purports to waive [plaintiffs'] statutory right to

seek such relief." *Id.* at 958–961.

To reach this result, the court relied on Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by private agreement." The court explained that because the relief available under the UCL, the CLRA, and the FAL is "primarily for the benefit of the general public," any waiver of the right to seek public injunctive relief under those statutes "would seriously compromise the public purposes the statutes were intended to serve." *Id.* Accordingly, under *McGill,* "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill,* 2 Cal.5th at 962.

The Ninth Circuit subsequently affirmed the *McGill* ruling in *Blair,* 928. F.3d at 828. In *Blair,* the plaintiff entered into an agreement with Rent-A-Center to rent household items through set installment payments, and after all payments are made on time or if the consumer is able to pay the full cash price early, the consumer takes ownership of the item. The plaintiff challenged this practice by asserting that Rent-A-Center charged total payment and cash price amounts that far exceeded the price of the items, in violation of various consumer protection laws. The plaintiff sought public injunctive relief. However, the arbitration provision in the agreement stated that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action." *Id.* at 822-23.

The Ninth Circuit denied the defendant's motion to compel arbitration based on its ruling that "[t]he *McGill* rule is a generally applicable defense derived from long-established California public policy. It is a 'ground[] … for the revocation of any contract' and falls within the FAA's savings clause at the first step of the preemption analysis", citing 9 U.S.C. § 2, which "permits agreements to arbitrate to be invalidated by generally applicable contract defenses." *Id.* at 828.

The Ninth Circuit issued similar opinions in *McArdle v. AT&T Mobility, LLC,* 772 Fed. Appx. 575 (9th Cir. 2019), *cert denied.,* No. 19-1078, 140 S. Ct. 2827 (U.S. June 1, 2020) (concurrently filed opinion adopting holding in *Blair*); *see also Tillage v. Comcast Corp. et al.,* 772 Fed. Appx. 569 (9th Cir. 2019), *cert. denied,* No. 19-1066, 140 S. Ct. 2827 (U.S. June 1, 2020) (same). AT&T and Comcast unsuccessfully sought certiorari review by the Supreme Court of the United States in *McArdle* and

PLAINTIFFS' MEMORANDUM ISO OPPOSITION TO MOTION TO COMPEL ARBITRATION

1    *Tillage.*    The Supreme Court's denial of certiorari leaves the *McGill* rule intact and controlling

2    precedent.[2]

3                    **2.       Tesla's Arbitration Provision is Unenforceable Under *McGill***

4         Tesla's Arbitration Provision broadly requires the arbitration of "any dispute arising out of or

5    relating to any aspect of the relationship" between Plaintiffs and Tesla:

6              **Agreement to Arbitrate.** Please carefully read this provision, which applies to any
             dispute between you and Tesla, Inc. and its affiliates, (together "Tesla") . . . . you agree
7             that any dispute arising out of or relating to any aspect of the relationship between you
             and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an
8             arbitration. . . . This includes claims arising before this Agreement, such as claims related
             to statements about our products.

9

10   *See* 2021 Order Agreement, p. 4; 2022 Order Agreement, p. 3.

11        Accordingly, there is no dispute that this provision compels *all* disputes to arbitration—even

12   those seeking public injunctive relief as a remedy.

13        Further, the Order Agreements contain a waiver that expressly bars an arbitrator from resolving

14   such disputes that are representative in nature and restricts the arbitrator's ability to award public

15

16   ─────────────
     [2] Tesla might predictably argue that the United State Supreme Court's recent decision in *Viking River
17   Cruises, Inc. v. Moriana,* 142 S. Ct. 1906 (2022) overruled *McGill* or abrogated *Blair.* Any such
     argument should be rejected by this Court. In *Viking River,* the Supreme Court reviewed California's
18   Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698, *et seq.,* which provides employees the
     authority to sue their employer on a representative basis, and the subsequent California rule that held
19   arbitration agreements that purport to waive this PAGA right were unenforceable, *Iskanian v. CLS
     Transp. L.A., LLC,* 59 Cal. 4th 348, 383 (2014). *Viking River,* 142 S. Ct. at 1919–1920. The Supreme
20   Court abrogated *Iskanian* by holding "*Iskanian*'s rule that PAGA actions cannot be divided into
     individual and non-individual claims is preempted" because it "unduly circumscribes the freedom of
21   parties to determine the issues subject to arbitration" where "[t]he only way for parties to agree to
     arbitrate *one* of an employee's PAGA claims is to also agree to arbitrate *all other* PAGA claims in the
22   same arbitral proceeding." *Id.* at 1913, 1923-34 (citations and internal quotation marks omitted). What
     *Viking River* did *not* address was a request for public injunctive relief, *McGill, Blair,* or any of the
23   governing law or factual circumstances at issue here. Indeed, California courts have repeatedly and
     correctly held that *Viking River* had zero impact on either *McGill* or *Blair. See, e.g., McBurnie v.
24   Acceptance Now, LLC,* No. 3:21-cv-01429-JD, 2022 WL 17342195, at *4 (N.D. Cal. Nov. 30, 2022),
     *appeal filed* Dec. 6, 2022 (denying arbitration on waiver grounds, in part, because defendant's
25   "suggestion that *Viking River* effected a sea change in the enforceability of the arbitration agreement
     [under *McGill* and *Blair*] is questionable at best" because "*Viking River* abrogated a different California
26   rule that invalidated agreements to arbitrate only individual PAGA claims for Labor Code violations"
     and "*McGill* did not involve PAGA or present the same ostensible dilemma"); *MacClelland v. Cellco
27   Partnership,* 609 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2022), *appeal filed* July 13, 2022 (finding
     arbitration provision in wireless service customer agreement prohibiting public injunctive relief was
28   substantively unconscionable and unenforceable under *McGill* and noting "nothing in *Viking River*
     overrules or undermines *McGill*'s core holding that an arbitration agreement cannot prohibit a party from
     seeking public injunctive relief in any forum").

─────────────

PLAINTIFFS' MEMORANDUM ISO OPPOSITION TO MOTION TO COMPEL ARBITRATION

injunctive relief:

> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. ***The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.*** If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

*See id.* (emphasis added).

When these provisions are read together, they improperly waive Plaintiffs' right to seek public injunctive relief in any forum.

> **a.   Tesla's Arbitration Provision Improperly Waives the Right to Seek Public Injunctive Relief in Any Forum**

*McGill* is controlling and invalidates the Arbitration Provision in this case. Tesla's Arbitration Provision explicitly limits the arbitrator from making decisions or awarding relief that benefits anyone other than Plaintiffs: "The arbitrator cannot hear class or representative claims or requests for relief on behalf of others." *Id.* Combined with the requirement that "any dispute arising out of or relating to any aspect of the relationship" between Plaintiffs and Tesla, "includ[ing] claims arising before this Agreement," the Arbitration Provision violates *McGill* because it waives Plaintiffs' right to seek public injunctive relief in any forum. *Id.*

The overwhelming majority of courts that have reviewed arbitration provisions containing the same, or substantially similar operative language—including two California district courts who already held that Tesla's Arbitration Provision at issue herein violated *McGill*—have concluded that similar arbitration provisions that bar representative, class, and collective actions and limit the arbitrator to awarding relief on an individual basis only are unenforceable because they prohibit the right to seek public injunctive relief. *See e.g., Nguyen,* 2020 WL 2114937 at *5 (holding that "[a]lthough [Tesla's] provision does not say so explicitly, its various proscriptions combine to preclude consumer-signatories from seeking public injunctive relief *in any forum,* rendering the provision unenforceable under *McGill*); *Lee,* 2020 WL 10573281 at *7–8 (concluding the same provision that "prohibit[s] representative claims or requests for relief on behalf of others" to be "void" and against public policy as to California plaintiffs

under *McGill*); *MacClelland,* 609 F. Supp. 3d at 1037 (holding that arbitration provision with language that "preclude[ed] injunctive relief benefitting anyone other than the individual claimant . . . prevents Plaintiff from seeking public injunctive relief in any forum, a right which cannot be denied whether in arbitration or otherwise"); *Blair,* 928 F.3d at 823 (agreement barred public injunctive relief in any forum when it provided that arbitration "shall be conducted on an individual basis" and prohibited the arbitrator from awarding relief that would "affect [individuals] other than you"); *McArdle v. AT&T Mobility LLC,* 2017 WL 4354998, at *4-5 (N.D. Cal. Oc. 2, 2017) (similarly holding that a prohibition on public injunctive relief in arbitration, providing that the arbitrator could "award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim" when read "[i]n combination with the agreement . . . that all claims and disputes, broadly defined, would be arbitrated, . . . constitutes a waiver of public injunctive relief in all for a that violates the *McGill* rule"), *aff'd. mem.* 772 Fed. Appx. 575 (2019). Each and every one of these decisions, which involved either identical or similar language to that used by Tesla compels a finding that Tesla's Arbitration Provision squarely violates *McGill* by improperly waiving the right to seek public injunctive relief in any forum. Indeed, in a tacit recognition of the fact that its arbitration provision does not allow an arbitrator to award public injunctive relief, Tesla did not move to compel arbitration in the coordinated *Corona* case, which seeks only public injunctive relief, even though an agreement to arbitrate almost certainly exists with that plaintiff, too.

In sum, because Tesla's Arbitration Provision compels all claims to arbitration, yet only allows Plaintiffs to pursue relief individually in that forum, the provision at issue bars Plaintiffs' right to seek public injunctive relief in any forum and therefore violates *McGill.*

> **b.    Plaintiffs Seek Public Injunctive Relief on Behalf of the General Public**

As the Ninth Circuit held in *Blair,* 928 F.3d 819, an injunction under the UCL or CLRA that seeks "the elimination of deceptive practices" is, by definition, "public injunctive relief." *Id.* at 824. Here, Plaintiffs' Complaint plainly includes a request for a public injunction to prevent Tesla from continuing to deceive and mislead both current and prospective Tesla owners about its vehicles' driving range, which is "relief oriented to and for the benefit of the general public." *See id.* at 831 n.3; *see* Compl., ¶ 8. The Complaint makes clear that the public injunctive relief is sought to protect the general

public from Tesla continuing to mislead consumers about the driving range on its electric vehicles—those misrepresentations that Tesla "prominently advertises" to the public through "nearly all of its marketing and across all marketing channels" and which "prospective customers unquestionably rely on . . . when deciding to buy a Tesla automobile." *Id.*, ¶¶ 22-23 (incorporating a screenshot of Tesla's advertised driving range published on its website), 32-33, 103. Further, Plaintiffs allege that "[b]y falsely marketing the driving range of its vehicles," Tesla deceives consumers "into making purchases they otherwise would not make." *Id.*, ¶ 92. Plaintiffs allege that Tesla's conduct is ongoing, and therefore, the remedy of injunctive relief on behalf of the general public is necessary "to prevent Tesla from continuing to engage in the deceptive and misleading practices" as to its advertised driving ranges, which Tesla knows "is one of the most important factors to consumers deciding which electric vehicle to buy." *Id.*, ¶¶ 96, 22. Accordingly, because the injunction requested "does not limit itself to relief only for class members or some other small group of individuals[,] it encompasses consumers generally." *Mejia v. Dacm, Inc.,* 2020 WL 5525793, *7 (Cal. Ct. App. Aug. 24, 2020) (internal quotation marks and citations omitted).

The overwhelming weight of legal authority is in accord that allegations like Plaintiffs' sufficiently create a request for public injunctive relief. *See, e.g.*, *Nguyen*, 2020 WL 2114937 at *4 (rejecting Tesla's argument that Nguyen's "laser-focus[] on obtaining monetary relief" forecloses his request for public injunctive relief where the "FAC contains plenty references to the public harm Plaintiffs allege that Tesla has been causing," including Nguyen's request to rectify Tesla's misleading advertisements and marketing disseminated throughout California and the United States, including those misrepresentations that were "publicly displayed on Tesla's website"); *Lee,* 2020 WL 10573281 at *7 (plaintiff sought public injunctive relief when he sought "an injunction regarding Tesla's allegedly misleading marketing practices" from which "the public would likely benefit" if granted); *MacClelland,* 609 F. Supp. 3d at 1038 (finding request "to enjoin Verizon from falsely advertising the prices of its wireless service plans to members of the general public via public injunctions under the UCL, FAL, and CLRA—the very same statutes and type of relief at issue in *McGill*"—was a "paradigmatic example of public injunctive relief"); *In re Stubhub Refund Litig.,* No. 20-md-02951-HSG, 2021 WL 5447006 at *11 (N.D. Cal. Nov. 22, 2021) ("Although some of the relief Plaintiffs seek may only benefit Plaintiffs or

Stubhub consumers who have purchased tickets through Stubhub [*e.g.*, an injunction requiring Stubhub to honor its refund policy, to preclude Stubhub from unilaterally changing the terms of the guarantee, or to provide clear, conspicuous, and extensive corrective advertising regarding the guarantee], the Court finds that Plaintiffs are also seeking this 'paradigmatic example' of public injunctive relief to preclude Defendant from misrepresenting to the general public the protections afforded by its FanProtectTM Guarantee"); *Vasquez v. Cebridge Telecom CA,* No. 21-cv-06400-EMC, 2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) (plaintiff sought public injunctions under the UCL, CLRA, and FAL that were "expressly aimed at enjoining Suddenlink's false advertising to the general public" where he requested enjoining "advertising or quoting an internet service plan price" without the deceptive Network Enhancement Fee; "advertising or representing that the prices of its internet service plans are fixed and will not increase during a specified promotional period;" "stating to members of the public that the Network Service Fee" is a tax, government fee, regulatory fee, or out of Suddenlink's control); *Blair,* 928 F.3d at 831 n.3 (holding plaintiff seeks public injunctive relief where she seeks "to enjoin future violations of California's consumer protection statutes"); *Mejia,* 2020 WL 5525793 at *7 (plaintiff sought public injunctive relief where his prayer sought an injunction forcing defendant to cease selling motor vehicles in the state of California without first providing the consumer with disclosures mandated by the Civil Code in a single document because he does not limit relief "for class members or some other small group of individuals; it encompasses 'consumers' generally"); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 722 (2010), *cert. denied,* No. 21-31, 142 S. Ct. 708 (U.S. Dec. 13, 2021) (plaintiff sought public injunctive relief in case challenging terms of a loan because "it is enough that the requested relief has the purpose and effect of protecting the public from Lender's ongoing harm"); *McArdle,* 772 F.App'x 575 (affirming district court's finding that a plaintiff was pursuing public injunctive relief where the plaintiff was seeking to enjoin AT&T from "charg[ing] exorbitant fees for international cellular telephone service"); *Olosoni v. HRB Tax Group, Inc.,* No. 19-cv-03610-SK, 2019 WL 7576680 at *4 (N.D. Cal. Nov. 5, 2019) (finding plaintiffs pled public injunctive relief where they sought to alter "broadly-directed advertising" regarding H&R Block's "free filing" offers because they were "designed to lure in a large swath of the general public," regardless if only some of whom were eligible for the product advertised).

As such, because Plaintiffs seek to eliminate the public dissemination of deceptive misinformation regarding Tesla's battery range and to enjoin Tesla from future violations of California's consumer protection statutes, Plaintiffs seek public injunctive relief.

> **3. Because the Waiver Is Invalid, the Entire UCL, CLRA, and FAL Claims for Relief Must Be Severed for Judicial Determination, Not Just the Request for Public Injunctive Relief**

Finally, the conclusion that Tesla's arbitration provision violates *McGill* means that Plaintiffs' claims under the UCL, CLRA, and FAL all belong in this Court per the terms of the agreement. Tesla's arbitration agreement states:

> If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

Thus, the agreement unambiguously dictates that Plaintiffs' claims for breach of express and implied warranties, and for breach of contract, must be arbitrated, but Plaintiffs' claims under the UCL, CLRA, and FAL must be fully litigated in court.

Plaintiffs anticipate that Tesla will argue, as it did in *Nguyen* and *Lee,* that only Plaintiffs' request for public injunctive relief should stay in Court, while the remainder of Plaintiffs' UCL, CLRA, and FAL claims should be arbitrated, including liability and all other remedies sought for such claims. But this is belied by the text of the provision itself, which does not contemplate splitting causes of action such that liability determinations are determined separately from the relief awarded. While Tesla could have drafted its provision to so state, it did not. Instead, it instructs the opposite: only "***other claims,***" *i.e.*, causes of action other than those seeking public injunctive relief, must be arbitrated.

Tesla's dictate that "other claims" be arbitrated—and not other *remedies*—is dispositive. As the Ninth Circuit held when evaluating a similar severance provision, a "claim" refers to an entire cause of action, and not simply a request for relief. In *Blair,* 928 F.3d at 831, the Ninth Circuit rejected the defendant's argument that the court should sever liability from the remedy. In so holding, the court noted, "Rent-A-Center reads 'claim for relief' in the severance clause to refer only to a particular remedy, not to the underlying claim" but this reading was "unnatural and unpersuasive." Thus, when Tesla states "*other claims* must be arbitrated," and not "other remedies," this reasonably refers to Plaintiffs' breach of

contract and breach of warranty claims, and not Plaintiffs' request for damages under the CLRA, UCL, and FAL. Indeed, Tesla's decision not to use the phrase "other claims or remedies"—a phrase it used *twice* previously in the same sentence—must be understood to be intentional, especially in view of the axiom that contracts are to be construed against the drafter (*contra proferentem*), which, in this case, is Tesla.

Predictably, Tesla will attempt to disavow the latter half of its severance provision and rely exclusively on the first half of the provision, which states that if a court determines the arbitration provision cannot be enforced as to a "claim for relief or remedy," "only that claim or remedy must be brought in court." This provision does not, as Tesla will surely contend, mean liability should be severed, as opposed to severing by "claim." To start with, the provision is nonsensical. A "remedy," by itself, cannot be "brought" in court at all. A "remedy" can be *awarded* by a court, but only in response to a finding of liability with respect to a given cause of action. A plaintiff may not "bring" an action for public injunctive relief without tethering that request for public injunctive relief to an underlying legal claim. Thus, Tesla's mandate that a plaintiff "bring" a "remedy" in court makes no sense, and it is the latter half of the severance provision mandating that "***other claims***" be arbitrated that should be given effect.

This conclusion is further necessitated by the provision's use of the verb "to bring," which commonly means to initiate or cause to exist. ("that claim or remedy (and only that claim or remedy) *must be brought in court* . . .") The verb "to bring" describes adjudicating a particular claim in court from its inception, as opposed to partially litigating a claim in arbitration, and then *continuing* to litigate the remainder of the claim in court. Tesla did not say, as it could have, that "only that claim or remedy" could be *decided* by a court after an arbitrator had made all preliminary determinations, including as to liability. Instead, it stated "a claim or remedy" must be *brought* in court, and "*any other claims"* must be arbitrated. This can have only one meaning: Plaintiffs' UCL, CLRA, and FAL claims are rightfully "brought" in court, and Plaintiffs' remaining claims must be arbitrated.

The numerous courts that have reviewed language similar to Tesla's, language that permits severance of a "claim or remedy (and only that claim or remedy)," have required the severance of plaintiffs' *entire* UCL, FAL, and CLRA claims, and not just their request for public injunctive relief. *See,*

*e.g.*, *Jack,* 91 Cal. App. 5th at 1209 (following *Blair* and finding severance clause that required "that claim (and only that claim) must be severed from the arbitration and may be brought in court" meant that "plaintiffs' claims (that is, their three causes of action under the Consumer Legal Remedies Act, false advertising law, and UCL, respectively) cannot be arbitrated and may be brought in court" because "it is far more reasonable to read 'claim for relief' to refer to a person's claim and not to a particular remedy requested in respect to a claim"); *In re StubHub Refund Litig.,* 2022 WL 1028711 at *2 (N.D. Cal. Apr. 6, 2022) (following *Blair* and finding severance clause that required "that claim (and only that claim) must be severed from arbitration and may be brought in court" meant that "the entire UCL, CLRA, and FAL claims must be severed for judicial determination, and not just the request for public injunctive relief"); *McBurnie,* 2022 WL 17342195 at *5 (following *Blair* in severing "each claim, in its entirety" for judicial determination where arbitration agreement prohibited public injunctive relief in violation of *McGill* in action alleging violations of the CLRA and UCL arising from defendant's charging of excessive fees in connection with its rent-to-own furniture business).

Like the foregoing, here, Tesla's agreement mandates that Plaintiffs' entire UCL, CLRA, and FAL claims be "brought" in court, and the "other claims" must be arbitrated.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court DENY Defendant's Motion to Compel Arbitration of Plaintiffs' Claims on an Individual Basis with respect to Plaintiffs' UCL, CLRA, and FAL claims.

Dated:  December 18, 2023

**KALIELGOLD PLLC**

By:*/s/ Sophia G. Gold*
Sophia G. Gold
Jeffrey D. Kaliel

**WATTS GUERRA LLP**
Francisco Guerra IV
Jennifer A. Neal

*Attorneys for Plaintiff and the Proposed Class*

1

## **CERTIFICATE OF SERVICE**

2

      I certify that on December 18, 2023, I filed the foregoing document with the Clerk of Court for

3

the United States District Court, Northern District of California, by using the Court's CM/ECF system,

4

and also served counsel of record via this Court's CM/ECF system.

5

6

                                */s/ Sophia G. Gold*

7

                                Sophia G. Gold

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM ISO OPPOSITION TO MOTION TO COMPEL ARBITRATION